# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| GUNAY MIRIYEVA, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 19-3351 (ESH) |
| ) | |
| U. S. CITIZENSHIP AND IMMIGRATION ) | |
| SERVICES, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## <u>MEMORANDUM OPINION</u>

Before the Court is yet another case involving immigrants who enlisted in the Unites
States military as part of the MAVNI program.[1]  These plaintiffs, Gunay Miriyeva, Ann Tum,
Siddhi Kulkarni, and Bipin Kadel, are seeking naturalization under 8 U.S.C. § 1440, which
provides an expedited path to naturalization based on military service during certain periods of
military hostilities.  Their applications have been denied by United States Citizen and
Immigration Services ("USCIS") on the ground that they do not meet the statutory requirements
for naturalization under 8 U.S.C. § 1440(a) because their "uncharacterized" discharges mean that

---

[1] The MAVNI ("Military Accessions Vital to the National Interest") program, which was
authorized from 2009 through 2017, allowed non-citizens who were lawfully present in the
United States but not permanent residents to enlist in the military if they possessed critical
foreign language skills or specialized medical training.  Three other cases relating the te to the
MAVNI program and MAVNI soldiers' path to citizenship are pending before this Court.  *See
Nio v. U.S. Dep't of Homeland Security*, No. 17-cv-0998; *Kirwa v. U.S. Dep't of Defense*, No.
17-cv-01793; *Calixto v. Dep't of the Army*, No. 18-cv-01551.  A more detailed description of the
MAVNI program can be found in this Court's prior opinions.  *See Nio*, 385 F. Supp. 3d 44, 46-
57 (D.D.C. 2019); *Kirwa*, 285 F. Supp. 3d 257, 263-64 (D.D.C. 2018).

they were not "separated under honorable conditions."  Plaintiffs claim that the USCIS "policy" that led to the denial of their applications violates the Administrative Procedure Act ("APA"), 5 U.S.C. § 551, *et seq.*, and the United States Constitution.  Defendants, USCIS and its Director, Kenneth Cuccinelli, have moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Because the Court agrees with defendants that 8 U.S.C. § 1421 precludes the current action, their motion to dismiss for lack of jurisdiction will be granted.

## BACKGROUND

### I. STATUTORY AND REGULATORY FRAMEWORK

#### A. Eligibility for Naturalization Based on Military Service (8 U.S.C. § 1440)

Section 329 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1440, provides an expedited path to citizenship based on service in the United States Armed Forces during certain periods of military hostilities.  In relevant part, it provides:

**(a) Requirements**

Any person who, while an alien or a noncitizen national of the United States, has served honorably as a member of the Selected Reserve of the Ready Reserve or in an active-duty status in the military, air, or naval forces of the United States during [certain specific periods of military hostilities], and *who, if separated from such service, was separated under honorable conditions*, may be naturalized as provided in this section . . . .  *The executive department under which such person served shall determine* whether persons have served honorably in an active-duty status, and *whether separation from such service was under honorable conditions* . . . .

**(b) Exceptions**

A person filing an application under subsection (a) of this section shall comply in all other respects with the requirements of this subchapter, except that –

. . .

> **(3)** service in the military, air or naval forces of the United States shall be proved by a duly authenticated certification from the executive department under which the applicant served or is serving, which shall state whether the applicant served honorably in an active-duty status during [a specified

period of military hostilities] and was separated from such service under honorable conditions . . . .

8 U.S.C. § 1440 (emphasis added).

**B.    Administrative Naturalization Procedure (8 U.S.C. §§ 1421, 1446, 1447)**

"The sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General." 8 U.S.C. § 1421(a). USCIS is the agency designated to make naturalization decisions with respect to applicants pursuing naturalization under 8 U.S.C. § 1440.[2] *See* 6 U.S.C. § 271(b)(2). An application for naturalization is first decided by a USCIS examining immigration officer. *See* 8 U.S.C. § 1446(d). If the application is denied, the applicant may request a hearing before another immigration officer. 8 U.S.C. § 1447(a); *see also* 8 C.F.R. § 336.2(a) ("The applicant, or his or her authorized representative, may request a hearing on the denial of the applicant's application for naturalization by filing a request with USCIS within thirty days after the applicant receives the notice of denial."); USCIS Form N-336 ("Request for Hearing on a Decision in Naturalization Proceedings Under Section 336"[3]). "Upon receipt of a timely request for a hearing, USCIS will schedule a review hearing, within a reasonable period of time not to exceed 180 days from the date upon which the appeal is filed." 8 C.F.R. § 336.2(b).[4]

---

[2] Prior to 2002, the Attorney General had delegated his naturalization authority to the Immigration and Naturalization Service ("INS"). 8 C.F.R. § 100.2 (1994). The Homeland Security Act of 2002, Pub. L. No. 107–296, 116 Stat. 2135 (2002), abolished the INS and transferred its naturalization authority to the Bureau of Citizenship and Immigration Services (now USCIS) within the Department of Homeland Security.

[3] Section 336 of the INA is codified at 8 U.S.C. § 1447.

[4] 8 C.F.R. § 336.2 establishes the parameters of the administrative review:

The review will be with an officer other than the officer who conducted the original examination or who rendered determination upon which the hearing is based, and who is classified at a grade level equal to or higher than the grade of

**C.     Judicial Review (8 U.S.C. § 1421(c))**

If a naturalization application is denied by the USCIS hearing officer, § 1421(c) provides

for judicial review of that denial:

> **(c) Judicial review**
>
> A person whose application for naturalization under this subchapter is denied,
> after a hearing before an immigration officer under section 1447(a) of this Title,
> may seek review of such denial before the United States district court for the
> district in which such person resides in accordance with chapter 7 of title 5 [the
> "Judicial Review" chapter in the APA].  Such review shall be de novo, and the
> court shall make its own findings of fact and conclusions of law and shall, at the
> request of the petitioner, conduct a hearing de novo on the application.

8 U.S.C. § 1421(c).

**D.     USCIS Policy Manual**

Pursuant to § 1440, a former service member seeking naturalization must have been

"separated from such service  . . . under honorable conditions."  8 U.S.C. § 1440(a).  With

respect to this requirement, the USCIS Policy Manual states:

> Honorable service means only service in the U.S. armed forces that is designated
> as honorable service by the executive department under which the applicant

---

> the examining officer.  The reviewing officer will have the authority and
> discretion to review the application for naturalization, to examine the applicant,
> and either to affirm the findings and determination of the original examining
> officer or to re-determine the original decision in whole or in part.  The reviewing
> officer will also have the discretion to review any administrative record which
> was created as part of the examination procedures as well USCIS files and
> reports.  He or she may receive new evidence or take such additional testimony as
> may be deemed relevant to the applicant's eligibility for naturalization or which
> the applicant seeks to provide.  Based upon the complexity of the issues to be
> reviewed or determined, and upon the necessity of conducting further
> examinations with respect to essential naturalization requirements, such as
> literacy or civics knowledge, the reviewing immigration officer may, in his or her
> discretion, conduct a full de novo hearing or may utilize a less formal review
> procedure, as he or she deems reasonable and in the interest of justice.

8 C.F.R. § 336.2(b).

performed that military service.

Both "Honorable" and "General-Under Honorable Conditions" discharge types qualify as honorable service for immigration purposes. Other discharge types, such as "Other Than Honorable," do not qualify as honorable service.

USCIS Policy Manual, Vol. 12, Part I, Chapter 3.

E.      **Army Discharge Regulations**

The Army gives four different types of discharges: honorable, general (under honorable conditions), under other than honorable conditions, and uncharacterized.  During the first 180 days of active military service, a service member is considered by the Army to be in "entry-level status."  *See* Department of Defense Instruction ("DoDI") 1332.14, at 55; Army Regulation ("AR") 135-178, at 103.  If discharged while in entry-level status, the Army classifies the discharge as "uncharacterized."  AR 135-178, ¶ 2-11 ("Service will be described as uncharacterized if separation processing is initiated while a Soldier is in an entry level status . . . ."); *see also* DoDI 1332.14 at Enclosure 4, 3c.[5]  Alternatively, if a servicemember is discharged after he or she is no longer "entry-level," the Army characterizes the discharge as either honorable, general (under honorable conditions), or under other than honorable conditions.  AR 135-178, at 103.  The characterization of a discharge appears on the servicemember's discharge form (Form DD-214, Certificate of Release or Discharge from Active Duty).  (*See, e.g.*, Compl. ¶ 44.)

---

[5] An entry-level servicemember may receive a different type of discharge in only two instances:  "[w]hen characterization under other than honorable conditions is authorized under the reason for separation and is warranted by the circumstances of the case," or when "[t]he Secretary of the Army, or the Secretary's designated representative, on a case-by-case basis, determines that characterization of service as honorable is clearly warranted by the presence of unusual circumstances involving personal conduct and performance of military duty."  AR 135-178, ¶ 2-11.

## II.    FACTUAL BACKGROUND

Each plaintiff served in the United States Army and has applied for naturalization pursuant to 8 U.S.C. § 1440.

Miriyeva currently resides in San Diego, California.  She enlisted in the Army's Selected Reserve of the Ready Reserve in 2016.  Her naturalization application was initially approved on October 4, 2018.  But then she was discharged on December 21, 2018, for medical reasons, and because she had served fewer than 180 days of "active" duty, she received an "entry-level" or "uncharacterized" discharge.  Following her discharge, USCIS revoked its approval of her naturalization application on the ground that an "uncharacterized" discharge is not a separation "under honorable conditions."  Miriyeva has filed an N-336 form requesting an administrative hearing pursuant to 8 U.S.C. 1447(a).  As of December 11, 2019, her administrative appeal was still pending.

Tum currently resides in Richmond, Kentucky.  She enlisted in the Army's Selected Reserve of the Ready Reserve in 2016.  She was discharged on February 19, 2019, for medical reasons, and because she had served less than 180 days, she received an "entry-level" or "uncharacterized" discharge.  USCIS then denied her naturalization application on the ground that an "uncharacterized" discharge is not a separation "under honorable conditions."  Tum filed an N-336 form requesting an administrative hearing pursuant to 8 U.S.C. 1447(a).  The hearing took place on November 21, 2019, but as of December 11, 2019, there had been no decision.

Kulkarni currently resides in Warrensburg, Missouri.  She enlisted in the Army on January 22, 2016.  She was discharged on December 7, 2018, for medical reasons.  Her

discharge form indicated that her discharge was "uncharacterized."[6]  USCIS denied her

naturalization application on the ground that an "uncharacterized" discharge is not a separation

"under honorable conditions."  Kulkarni filed an N-336 form requesting an administrative

hearing pursuant to 8 U.S.C. 1447(a).  Her administrative appeal was denied on October 17,

2019.  As of December 21, 2019, she had not sought judicial review pursuant to 8 U.S.C.

§ 1421(c).

Kadel currently resides in Houston, Texas.  He enlisted in the Army on July 24, 2015.

He was discharged on August 4, 2017, with an effective date of July 24, 2017.  Because he had

served fewer than 180 days, his discharge was "uncharacterized."  USCIS denied his

naturalization application on the ground that an "uncharacterized" discharge is not a separation

"under honorable conditions."  Pursuant to 8 U.S.C. 1447(a), Kadel filed an N-336 requesting a

hearing.  As of December 11, 2019, his appeal was still pending.[7]

USCIS has offered virtually the same explanation in each case for its conclusion that an

"uncharacterized" discharge does not constitute a separation "under honorable conditions."  For

example, as to Miriyeva, USCIS stated:

> INA Section 329 requires that if an applicant was separated from service, that he
> or she was separated under honorable conditions.  Longstanding USCIS policy
> provides that only a discharge specifically characterized as either "honorable" or
> "general (under honorable conditions)" qualifies as a separation "under honorable
> conditions."  *See* USCIS Policy Manual Vol. 12, Part I, Chap. 3.  Because your

---

[6] According to the complaint, Kulkarni served more than 180 days and thus should not have
received an "uncharacterized" discharge.  (*See* Compl. ¶ 77.)

[7] The reason given for Kadel's discharge was that he had exceeded the maximum time allowed
by the MAVNI program.  The Army recently offered to reinstate Kadel.  According to plaintiffs,
he has accepted that offer (*see* Pls.' Opp. to Mot. to Dismiss at 1 n.1, ECF No. 16), but
defendants' most recent filing states that the Army "has not received any acceptance letter from
[him]" (Defs.' Reply, Ex. A, ECF No. 17).  It is assumed that his case will be moot once he is
reinstated.

character of service is listed as "uncharacterized" on your Certification of Release or Discharge from Active Duty, and there is nothing on your Form DD-214 or Form N-426 to suggest that your separation was in fact characterized as "under honorable conditions," you have not met your burden to demonstrate that the Department of the Army designated your separation as "under honorable conditions." Therefore, you have not met your burden to show that you are eligible for naturalization under INA 329 . . . .

(Compl. ¶ 44; *see also id.* ¶¶ 67, 80, 93 (explanations given to Tum, Kulkarni & Kadel).) Based on the documents submitted by defendants (*see* Defs.' Mot. to Dismiss, Declaration of Claudia Young ¶ 3 & Exs. 1-5, ECF No. 15-2), it appears that USCIS's "policy" that treats an "uncharacterized" discharge as a separation not "under honorable conditions" dates back to 2008.

## III.    PROCEDURAL HISTORY

### A.    Plaintiffs' Complaint

Instead of waiting for the conclusion of their administrative appeals and seeking judicial review pursuant to 8 U.S.C. § 1421(c), plaintiffs filed this case, seeking to challenge USCIS's "policy" of treating uncharacterized discharges as not "under honorable conditions." Their complaint includes four counts: (1) Count I alleges that the policy violates the APA, 5 U.S.C. § 706(2), and seeks an order vacating the policy (Compl. ¶¶ 112-130) ; (2) Count II alleges that the policy violates the Constitution's "Uniform Rule of Naturalization" clause and the Fifth Amendment's due process clause and seeks "appropriate equitable relief" (Compl. ¶¶ 131-38); (3) Court III is a claim under the Declaratory Judgment Act, 28 U.S.C. § 2201, and seeks "a declaratory judgment that uncharacterized discharges satisfy the 'under honorable conditions' eligibility requirement under § 1440" (Compl. ¶¶ 139-141); and (4) Count IV seeks injunctive relief enjoining defendants from "a) . . . applying the Policy; b) . . . denying any naturalization application or sustaining or maintaining the denial of any naturalization application, including

each Plaintiff's application, on the grounds that a military naturalization applicant cannot meet his/her burden of showing an 'under honorable conditions' discharge with discharge paperwork identifying the discharge as 'uncharacterized'[;] c) . . . treating an uncharacterized discharge differently than an Honorable or General – Under Honorable Conditions discharge for purposes of naturalization based on military service[; and] d) . . . denying naturalization applications or maintaining or sustaining the denial of a naturalization application on the grounds that an uncharacterized discharge renders a veteran ineligible for naturalization based on his/her military service."  (Compl. ¶ 146.)[8]

### B.  Motion to Dismiss

On November 22, 2019, defendants moved to dismiss plaintiffs' claims for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), and for failure to state a claim, Fed. R. Civ. P. 12(b)(6).[9]  (*See* Defs.' Mot. to Dismiss, ECF No. 15 ("Mot.")).  Plaintiffs filed their opposition on December 4, 2019 (*see* Pls.' Opp. to Mot. to Dismiss, ECF No. 16 ("Opp.")), and defendants filed their reply on December 11, 2019 (*see* Reply, ECF No. 17).

### ANALYSIS

Defendants argue that this case should be dismissed for lack of jurisdiction because (1) 8 U.S.C. § 1421(c) precludes plaintiffs' claims under the APA and the Constitution; and (2) absent a viable substantive claim, the Court lacks jurisdiction over the Declaratory Judgment Act claim.

---

[8] Plaintiffs filed a motion for a preliminary injunction in conjunction with their complaint.  (*See* Pls.' Mot. for Preliminary Inj., ECF No. 2.)  Pursuant to Fed. R. Civ. P. 65, the Court has consolidated the preliminary injunction hearing with a hearing on the merits.  (*See* Order, Nov. 13, 2019, ECF No. 13.)

[9] Because plaintiffs had initially moved for a preliminary injunction, the Court set an expedited briefing schedule for dispositive motions.

Because the Court agrees, it will not address defendants' other arguments for dismissal.[10]

## I.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a complaint, or any portion thereof, for lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  To survive a motion to dismiss under Rule 12(b)(1), plaintiffs bear the burden of proving that the Court has subject-matter jurisdiction to hear their claims.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  When reviewing a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), a court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'"  *Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

## II.    PRECLUSIVE EFFECT OF 8 U.S.C § 1421(c)

The narrow question before the Court is whether § 1421(c) precludes the claims of the four individual plaintiffs who have been denied naturalization because they were separated from the Army with "uncharacterized" discharges.  Those claims purport to challenge the USCIS "policy" relied on to deny plaintiffs' naturalization applications.  Although plaintiffs insist they are not asking this Court to reverse the denial of their naturalization applications, their claims attack head-on the only reason given for the denial of their applications.

Defendants argue that because plaintiffs must proceed via a § 1421(c) action to challenge

––––––––––––––––––––

[10] Defendants also argue that plaintiffs' claims should be dismissed because they failed to exhaust their administrative remedies, the statute of limitations has expired, and they lack standing to bring a claim under the Constitution's Uniform Rule of Naturalization.

the denial of their naturalization applications, they must also bring any challenges to the rationale underlying USCIS's denial of their naturalization applications – even if embodied in a "policy" – in a § 1421(c) proceeding.  Plaintiffs do not dispute that Congress intended § 1421(c) to be the exclusive means for seeking judicial review of the denial of a naturalization application.  (*See* Opp. at 4 ("[N]owhere do Plaintiffs seek to have their individual denials reviewed by this Court or to have this Court grant them naturalization.").)[11]  But they argue that § 1421(c) does not preclude them from also bringing a claim under the APA or the Constitution.

"Litigants generally may seek review of agency action in district court under any applicable jurisdictional grant." *Jarkesy v. SEC*, 803 F.3d 9, 15 (D.C. Cir. 2015).  However, "[i]f a special statutory review scheme exists . . . 'it is ordinarily supposed that Congress intended that procedure to be the exclusive means of obtaining judicial review in those cases to which it applies.'"  *Id.* (quoting *City of Rochester v. Bond*, 603 F.2d 927, 931 (D.C. Cir. 1979)).  In order to determine in a particular case whether "Congress intended that a litigant proceed exclusively through a statutory scheme of administrative and judicial review," a court must consider whether "(i) such intent is 'fairly discernible in the statutory scheme,' and (ii) the litigant's claims are 'of the type Congress intended to be reviewed within [the] statutory structure.'"  *Id.* (quoting

_____

[11] Courts are unanimous in holding that § 1421(c) is the sole means of seeking judicial review of the actual denial of naturalization application.  *See, e.g.*, *Heslop v. Att'y Gen.*, 594 F. App'x 580, 584 (11th Cir. 2014); *Ngamfon v. U.S. Dep't of Homeland Sec.*, 349 F. Supp. 3d 975, 983 (C.D. Cal. 2018); *Monterrubio v. Nielsen*, No. 17-cv-3916, 2018 WL 2247223, at *3 (S.D. Tex. May 16, 2018); *Hamod v. Kelly*, No. 16-cv-1191, 2017 WL 8947276, at *8 (D. Minn. June 12, 2017), *report and recommendation adopted sub nom. Hamod v. Duke*, No. 16-cv-1191, 2017 WL 3668762 (D. Minn. Aug. 24, 2017); *Maina v. Lynch*, No. 1:15-cv-00113, 2016 WL 2594813, at *3 (S.D. Ind. May 5, 2016); *Phong Thi Vu v. Mayorkas*, No. 12-cv-1933, 2013 WL 2390557, at *5-6 (S.D. Cal. May 30, 2013); *Kasica v. U.S. Dep't of Homeland Sec.*, 660 F. Supp. 2d 277, 282 (D. Conn. 2009).

*Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207, 212 (1994) (alteration in original)).

To answer these questions, courts look at the nature and purpose of the statutory review scheme, whether the plaintiff's claim is "wholly collateral" to or "inextricably intertwined" with the claims covered by the statutory review scheme, and whether a finding of preclusion would "foreclose all meaningful judicial review" of the claims or whether the statutory review scheme provides an "adequate remedy." *Id*. at 17 (Courts should "'presume' that Congress wanted the district court to remain open to a litigant's claims 'if a finding of preclusion could foreclose all meaningful judicial review; if the suit is wholly collateral to a statute's review provisions; and if the claims are outside the agency's expertise.'" (quoting *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 489-90 (2010))); *see also id*. at 23 (considering whether claims were "inextricably intertwined"); *McNary v. Haitian Refugee Ctr., Inc.,* 498 U.S. 479, 495-96 (1991) (considering whether the plaintiffs had an "adequate remedy" under the statutory review scheme because it was "most unlikely that Congress intended to foreclose all forms of meaningful judicial review" of the plaintiffs' due process claim); *Heckler v. Ringer*, 466 U.S. 602, 614, 617 (2013) (considering whether plaintiffs' had "adequate remedy" and whether claims were "inextricably intertwined"); *Am. Clinical Lab. Ass'n v. Azar*, 931 F.3d 1195, 1207 (D.C. Cir. 2019) (considering whether claims were "inextricably intertwined"); *DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 507 (D.C. Cir. 2019) (same); 5 U.S.C. § 704 ("[A]ctions reviewable" under the APA are limited to "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review.").[12]

---

[12] Although 5 U.S.C. § 704 only applies to APA claims, not constitutional claims, the question whether there is "no other adequate remedy" is no different than asking whether a finding of preclusion would foreclose all meaningful judicial review.

These "considerations" are not "distinct inputs into a strict mathematical formula, "but rather "general guideposts useful for channeling the inquiry into whether the particular claims at issue fall outside an overarching congressional design." *Jarkesy*, 803 F.3d at 17.

Applying these considerations, the Court concludes that 8 U.S.C. § 1421(c) bars plaintiffs from bringing their APA and constitutional claims.

## A. Congress Intended Plaintiffs' Claims To Be Reviewed Under the Statutory Review Scheme

Section 1421(c) in its current form was enacted as part of the Immigration Act of 1990 ("1990 Act"). Pub. L. No. 101-649, § 401(a), 104 Stat 4978, 5038 (1990). Prior to the 1990 Act, § 1421 provided that the power to grant or deny naturalization applications rested entirely with the courts.[13] 8 U.S.C. § 1421(a) (1952-1990). The Immigration and Naturalization Service (INS), an executive agency, played an administrative role, but did not adjudicate naturalization applications. The 1990 Act, specifically the amendment of § 1421, was designed to create a system of "administrative naturalization."[14] Decisions on the merits of a naturalization

---

[13] From the enactment of the Immigration and Nationality Act ("INA") in 1952 until the 1990 Act, 8 U.S.C. § 1421(a) provided that: "Exclusive jurisdiction to naturalize persons as citizens of the United States is hereby conferred upon the following specified courts: District courts of the United States now existing, or which may hereafter be established by Congress in any State, District Court of the United States for the District of Columbia and for Puerto Rico, the District Court of the Virgin Islands of the United States, and the District Court of Guam; also all courts of record in any State or Territory now existing, or which may hereafter be created, having a seal, a clerk, and jurisdiction in actions at law or equity, or law and equity, in which the amount in controversy is unlimited . . . ." INA, Pub. L. No. 414, § 310, 66 Stat. 163, 239 (1952); H.R. Rep. No. 101-187, at 17-18 (1989) (showing version in effect immediately prior to 1990 Act).

[14] *See* H.R. Rep. No. 101-187, at 10 ("Authority for naturalization is conferred upon the Attorney General by allowing the applicant for naturalization to commence and culminate the act of becoming a citizen of the U.S. within one Branch of Government rather than through the current two-tiered process. Under this legislation the applicant submits an application with the Immigration and Naturalization Service and shortly thereafter, upon being found statutorily eligible, a determination is made on the citizenship application by the Attorney General. This one step procedure addresses the current situation whereby the Immigration and Naturalization

application were now to be made by the Attorney General, with the courts' role limited to reviewing those decisions. *See* 8 U.S.C. § 1421(a) ("The sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General.").

After the completion of the administrative review, § 1421(c) provides that an applicant may seek judicial review of the denial of a naturalization application "in accordance with chapter 7 of title 5." Chapter 7 is the subsection of the APA that provides for judicial review, and by referring to this chapter, Congress has explicitly made the full scope of APA review available in a § 1421(c) action. *See De Dandrade v. U.S. Dep't of Homeland Sec.*, 367 F. Supp. 3d 174, 186-87 (S.D.N.Y. 2019). Section 1421(c) also provides that review is "de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application." As other courts have noted, the breadth of judicial review available under § 1421(c) is "rare, if not unique." *See, e.g.*, *Gonzalez v. Napolitano*, No. 2:09-cv-03426, 2010 WL 3522789, at *3 (D.N.J. Sept. 2, 2010) (noting with respect to § 1421(c) that "[*d]e novo* review of agency decision-making is rare, if not unique to the naturalization context"); *Nagahi v. INS,* 219 F.3d 1166, 1169 (10th Cir. 2000) (noting with respect to § 1421(c) that "[t]his grant of authority is unusual in its scope—rarely does a district court review an agency decision de novo and make its own findings of fact").

Congress' enactment of this "special statutory review scheme," with its broad scope of review, including a rare de novo standard of review, suggests that Congress intended that procedure to be the exclusive means of not just obtaining judicial review of the denial of a naturalization application, but also of claims arising out of or related to a denial. *See, e.g.*, *De*

---

Service does virtually all of the processing, makes recommendations to the Court for final disposition and yet the authority for final disposition of the case rests with the Court.")

*Dandrade*, 367 F. Supp. 3d at 186-87 ("Individual plaintiffs should not be permitted to bypass the legislative scheme [in § 1421(c)] designed to adjudicate and review questions related to their naturalization applications."); *Aparicio v. Blakeway*, 302 F.3d 437, 446 (5th Cir. 2002) ("Congress intended naturalization applicants to be thus restricted, not out of any desire to vex them but rather to guarantee that the only people who challenged the INS's interpretation of the Act would be those whose applications had been denied and who then worked within the administrative review system before resorting to the federal courts, with such resort being only pursuant to section 1421(c)."); *see also Elgin v. Dep't of Treasury*, 567 U.S. 1, 11-12 (2012) ("Given the painstaking detail with which [Congress] sets out the method for covered employees to obtain review [of agency] actions, it is fairly discernible that Congress intended to deny such employees an additional avenue of review in district court."); *Citizens for Responsibility & Ethics in Washington ("CREW") v. U.S. Dep't of Justice*, 846 F.3d 1235, 1245 (D.C. Cir. 2017) ("An alternative that provides for *de novo* district-court review of the challenged agency action offers further evidence of Congress' will [to preclude], given the frequent incompat[ibility] between *de novo* review and the APA's deferential standards." (internal quotations omitted)).

Plaintiffs' contention that the legislative history of the 1990 Act points to the opposite conclusion (*see* Opp. at 13) is not persuasive. Plaintiffs point to two pieces of legislative history to support their argument: (1) a statement that the proposed amendment to § 1421 "does not take away any of the judicial review rights accorded applicants today," 135 Cong. Rec. H4539, H4542 (July 31, 1989) (statement of Rep. Morrison); and (2) a statement made with respect to § 1421(c) that "citizenship is the most valued governmental benefit of this land and applicants should receive full recourse to the Judiciary when the request for that benefit is denied," H.R. Rep. No. 101-187, at 14 (1989). After examining the documents cited by plaintiffs and

additional legislative history, the Court concludes that the legislative history does not support

plaintiffs' argument because plaintiffs ignore the broader context behind the amendment of

§ 1421. Specifically, other legislative history makes it clear that the impetus for the changes to

§ 1421 was the extreme backlog in the courts' processing of naturalization applications. *See* 135

Cong. Rec. H4539-02, H4542 (statement of Rep. Morrison) ("This legislation . . . addresses a

very substantial concern that so many of all of our constituents have faced, and that is the

problem of long backlogs in moving through the naturalization process once the time period for

naturalization has been accomplished and the various requirements of naturalization have been

met, delay often runs into the months and sometimes beyond a year before an individual can

actually take his or her oath of allegiance to the United States and become a citizen."); *id*.

("[T]his legislation is directed to change [the previous] process and to create a one-step option

which will allow citizenship to be more expeditiously provided to those who qualify.

Administrative naturalization will restore the most vital elements of our system by which

applicants receive naturalization.").[15]

Given the goal of reducing judicial backlog, which Congress decided to achieve by

reducing the judiciary's role in the naturalization process, one cannot fairly read the two snippets

---

[15] *See also* 135 Cong. Rec. H4539-02, H4543 (statement of Rep. Smith) ("I rise in support of H.R. 1630, legislation that vests authority for the naturalization of individuals wishing to become U.S. citizens with the U.S. Attorney General. In addition, this bill streamlines the process by allowing the Attorney General to adjudicate naturalization petitions. Backlogs in the naturalization process have developed over a number of years due to an increased volume of applications for citizenship. In 1981, there were 171,000 petitions filed for naturalization, and in 1985, 306,000 applications were submitted. Personnel and funding levels within the Immigration and Naturalization Service as well as heavy dockets in the Judiciary have not kept pace with the demand, especially in heavy-volume areas such as New York and California. Paperwork backlogs in the executive and judicial branches make the road to citizenship a lengthy process. In order to streamline the process, H.R. 1630 vests authority for naturalization with the Attorney General, thus providing a one-step process from application to swearing-in.").

of legislative history quoted by plaintiffs as evidence that Congress was thinking about, or intended to preserve, an applicant's ability to bring an APA or constitutional challenge independent of a § 1421(c) action. Indeed, given that the 1990 Act created a comprehensive statutory scheme for administrative naturalization with a specific provision for robust judicial review, a far more plausible interpretation of those comments is that they reflect Congress' intent to ensure that even though the power to naturalize was being taken from the courts, applicants would still have access to plenary judicial review of unfavorable naturalization decisions.

**B.      Plaintiffs' Claims Are Not "Collateral"**

One of the most important factors that courts consider in deciding whether a statutory review scheme precludes a litigant's claims is whether those claims are "wholly collateral to a statute's review provisions." *Jarkesy*, 803 F.3d at 17 (internal quotations omitted); *see also Elgin,* 567 U.S. at 22; *Free Enter. Fund,* 561 U.S. at 489-90; *Heckler*, 466 U.S. at 614. If a claim is "wholly collateral," that suggests that "Congress wanted the district court to remain open" to that claim. *Jarkesy*, 803 F.3d at 17; *see also McNary*, 498 U.S. at 492 (finding that statute prohibiting "direct review of individual denials of [a particular immigration] status" did not preclude "general collateral challenges to unconstitutional practices and policies used by the agency in processing applications"); *Free Enter. Fund*, 561 U.S. at 490 (finding collateral claim not precluded); *Bowen v. Mich. Acad. of Family Physicians,* 476 U.S. 667, 680 (1986) (same). But if a claim is not "collateral," *i.e.*, if it is "inextricably intertwined" with a claim that must be brought pursuant to a statutory review scheme, that suggests that Congress intended it be precluded by the statutory review scheme. *Jarkesy*, 803 F.3d at 23 (finding preclusion where plaintiff's claims were "inextricably intertwined with the conduct of the very enforcement proceeding the statute grants the SEC the power to institute and resolve as an initial matter"

(internal quotations omitted)).

In explaining the term "collateral," courts have concluded that a claim is not "collateral" where it is "'at bottom' an attempt to reverse the agency's decisions denying [plaintiffs'] claims." *Id.* at 23 (quoting *Heckler,* 466 U.S. at 614, 618). For example, in *Jarkesy*, the D.C. Circuit found that the plaintiffs' "constitutional and APA claims" were not collateral because they were the "vehicle by which" the plaintiff sought "to prevail in his administrative proceeding." *Id.*; *see also Heckler*, 466 U.S. at 614 (plaintiffs' constitutional and statutory claims were not "collateral" to a scheme of administrative and judicial review of Medicare payment decisions because plaintiffs' challenge to the agency's "procedure" for making those decisions was, "at bottom," an attempt to reverse the agency's decisions denying benefits); *Elgin*, 567 U.S. at 22 (plaintiffs' constitutional claims are not collateral where they are nothing more than "the vehicle by which they seek to reverse the removal decisions, to return to federal employment, and to receive the compensation they would have earned but for the adverse employment action"); *DCH*, 925 F.3d at 506 (claim is not collateral where "a challenge to the methodology [for calculating Medicare estimates of payments] … is unavoidably a challenge to the estimates themselves"); *Fornaro v. James*, 416 F.3d 63, 68-69 (D.C. Cir. 2005) ("systemic" challenge that would "decide the merits" is not collateral). Collateral claims, by contrast, do not result in rulings that resolve the merits of the related statutory action. *See, e.g.*, *McNary*, 498 U.S. at 495 (ruling in plaintiffs' favor would not have the effect of establishing their entitlement to the immigration status outside the exclusive statutory scheme); *Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 126 (D.C. Cir. 2010) (favorable ruling for plaintiff would not resolve the merits of the underlying claim).

Here plaintiffs challenge the legal basis for the denial of their naturalization applications.

And, their ultimate goal is to reverse the denial of their naturalization applications. (*See* Compl. ¶ 146(b) (asking Court to enjoin defendants "from denying any naturalization application or sustaining or maintaining the denial of any naturalization application, including each Plaintiff's application, on the grounds that a military naturalization applicant cannot meet his/her burden of showing an 'under honorable conditions' discharge with discharge paperwork identifying the discharge as 'uncharacterized'") Thus, despite plaintiffs' argument that they are challenging a policy and not the denial of their naturalization applications, their policy claims are clearly not collateral to the claim they would bring in a § 1421(c) action. It follows that they are the "type" of claim Congress intended to be precluded by § 1421(c). Indeed, plaintiffs never contend that a non-collateral claim can proceed outside of a § 1421(c) action. *See* Opp. at 10 (citing cases to support their contention that "numerous other courts, including in this District, have found APA jurisdiction to be proper for a challenge to a policy collateral to an INA decision"). Rather, they start from the premise that their claims, like the claims in *McNary* and *Jackson*, are collateral.[16] The claims here, however, are *not* collateral, so the cases that plaintiffs rely on do not help their case.

### C.    "Meaningful Judicial Review" Will Remain Available

Another important factor that courts consider in deciding whether a statutory review

---

[16] Plaintiffs also rely on *O.A. v. Trump*, Nos. 18-cv-2718, 18-cv-2838, 2019 WL 3536334 (D.D.C. Aug. 2, 2019), where the court held that facial challenge to a rule barring the granting of asylum to asylum seekers who enter the United States outside a designated port of entry could proceed independently of plaintiffs' individual asylum claims. In *O.A.*, though, as in *McNary* and *Jackson*, the court found that the plaintiffs' claims were "wholly collateral" because they did not seek to overturn any asylum decision. *Id.* at *16.

scheme precludes a litigant's claims is whether preclusion would foreclose "all meaningful judicial review" of that claim or whether an "adequate remedy" would remain available. *See McNary*, 498 U.S. at 496 (finding no preclusion where "if not allowed to pursue their claims in the District Court, [plaintiffs] would not as a practical matter be able to obtain meaningful judicial review"); *Heckler*, 466 U.S. at 617 (finding preclusion where plaintiffs "clearly have an adequate remedy under [a statute] for challenging all aspects of the Secretary's denial of their claims for payment"); *Jarkesy*, 803 F.3d at 19 (finding preclusion where all claims would eventually reach an Article III judge and receive meaningful judicial review). The expansive judicial review provided for by § 1421(c) means that not only are plaintiffs not foreclosed from "all meaningful judicial review," but § 1421(c) is an "adequate remedy" for their claims.

First, as previously noted, § 1421(c) provides that an applicant may seek judicial review of the denial of a naturalization application "in accordance with chapter 7 of title 5," making available the full scope of APA review. Section 706 of the APA defines the scope of that review. In relevant part, it provides:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall –
> . . .
>
> **(2)** hold unlawful and set aside agency action, findings, and conclusions found to be –
> > **(A)** arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> >
> > **(B)** contrary to constitutional right, power, privilege, or immunity;
> >
> > **(C)** in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or]
> >
> > **(D)** without observance of procedure required by law . . . .

20

5 U.S.C. § 706(2).  Second, § 1421(c) provides that review is "de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application."

Together, these two provisions are critical to the Court's conclusion that § 1421(c) provides an "adequate remedy."  First, plaintiffs' current claims challenge the policy used to deny their applications as contrary to law, arbitrary and capricious, procedurally flawed and unconstitutional.  Because these are claims that are cognizable under § 706(2) of the APA, and because the full scope of APA review is available in a § 1421(c) action, plaintiffs will be able raise these same arguments under § 1421(c), including their constitutional claims, as they are raising here.[17]  *See De Dandrade*, 367 F. Supp. 3d at 186-87 (plaintiffs' APA and constitutional claims can be brought under § 1421(c)).  In addition, de novo review means that the reviewing court is not limited to the administrative record.  *See Aparicio,* 302 F.3d at 445 ("Judicial review of naturalization denials . . . is not limited to any administrative record but rather may be on facts established in and found by the district court de novo."); *Gonzalez*, 2010 WL 3522789, at *1 (§ 1421(c) allows for "broad discovery consistent with the Federal Rules").  Thus, there is no concern that considering plaintiffs' statutory and constitutional claims in a § 1421(c) action will be hampered by not having an adequate record.  *Compare McNary*, 498 U.S. at 497 (finding remedy inadequate in part because a court of appeals could only review the administrative record and thus lacked a district court's "factfinding and record-developing capabilities") *and*

_____

[17] Plaintiffs contend that they will not be able to raise their "notice and comment" or "publication" claims in a § 1421(c) action.  (*See* Opp. at 13.)  However, they fail to cite any authority to support this conclusion.  Moreover, the text of § 1421(c) suggests otherwise as it expressly provides for the full scope of APA review, and at least one court has recognized that a notice and comment claim can be raised in a § 1421(c) proceeding.  *See De Dandrade*, 367 F. Supp. 3d at 186-87.

*Jafarzadeh v. Duke*, 270 F. Supp. 3d 296, 310 (D.D.C. 2017) (no "effective judicial review" of APA and constitutional claims where the "plaintiffs would be constrained to an inadequate record") *with Jarkesy*, 803 F.3d at 21 (finding remedy adequate in part because "this is not a case in which meaningful judicial review likely would be thwarted by an inadequate factual record"). The plenary review available to plaintiffs under § 1421(c) stands in stark contrast to the limited or nonexistent review in *McNary* and its progeny, where courts have concluded that plaintiffs' claims were not precluded.

Finally, this case presents none of the other concerns that lead courts to find that an alternative remedy is not "adequate." For example, courts "normally do not require plaintiffs to 'bet the farm . . . by taking the violative action' before 'testing the validity of the law.'" *Jarkesy*, 803 F.3d at 20 (quoting *MedImmune, Inc., v. Genentech, Inc.*, 549 U.S. 118, 129 (2007)). Thus, in *McNary*, the court found no preclusion where the plaintiffs could ensure judicial review only if they "voluntarily surrender[ed] themselves for deportation," which was "tantamount to a complete denial of judicial review for most undocumented aliens." 498 U.S. at 496. But plaintiffs here are not in that situation. Nor is this a situation where there are significant differences in the type of relief available. *See, e.g., Bowen v. Massachusetts*, 487 U.S. 879, 901-08 (1988) (action in Claims Court did not provide adequate remedy because court lacked the equitable powers of a district court and would only be able to award monetary relief ). Plaintiffs argue that the relief available in a § 1421(c) action is substantially different than that which they can obtain here because they cannot obtain a nationwide injunction or vacatur of the policy in a § 1421(c) action. But even if that were true, there is no requirement that the alternative remedy be identical. *See, e.g.*, *CREW*, 846 F.3d at 1244-46 (under § 704, an "'alternative remedy need not provide relief *identical* to relief under the APA' in order to have preclusive effect" (quoting

*Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009))). And significantly, plaintiffs will be able to obtain the same individual relief. *De Dandrade*, 367 F. Supp. 3d at 187 ("All relief that individual plaintiffs seek [under the APA and the Constitution] may be granted under section 1421(c)."); *see also Garcia*, 563 F.3d at 525 (availability of individual actions "may be adequate even if such actions cannot redress the systemic [issues]" because "situation-specific litigation affords an adequate, even if imperfect, remedy" (internal quotations omitted)); *Council of & for the Blind of Delaware Cty. Valley, Inc. v. Regan*, 709 F.2d 1521, 1532 (D.C. Cir. 1983) ("Even if . . . one nationwide suit would be *more effective* than several [individual] suits, that does not mean that the remedy provided by Congress is *inadequate*.") Finally, the mere fact that plaintiffs will have to await the outcome of their administrative hearings before seeking judicial review pursuant to § 1421(c) does not render the remedy inadequate.[18] *See Jafarzadeh*, 270 F. Supp. 3d at 308 ("[A]a court must guard against a plaintiff who seeks 'to short-circuit the administrative process through the vehicle of a district court complaint.'" (quoting *Sturm, Ruger & Co. v. Chao*, 300 F.3d 867, 876 (D.C. Cir. 2002)).

The few courts to have considered the issue presented by this case have all concluded that § 1421(c) provides an adequate remedy for APA and constitutional claims related to the denial of naturalization applications. *See De Dandrade*, 367 F. Supp. 3d at 186-87 (plaintiffs' APA and constitutional claims can be brought under § 1421(c)); *Aparicio*, 302 F.3d at 447; *Phong Thi Vu v. Mayorkas*, No. 12-cv-1933, 2013 WL 2390557, at *4-6 (S.D. Cal. May 30, 2013); *Kasica v. U.S. Dep't of Homeland Sec.*, 660 F. Supp. 2d 277, 282-83 (D. Conn. 2009). This Court agrees

---

[18] There is no guarantee that pursuing one's remedies under § 1421(c) will consistently be slower. In the case of plaintiff Kulkarni, she could have gone to federal court as early as October 17, 2019, but she has still not initiated suit. Obviously, the process will be slowed down if a plaintiff does not invoke her § 1421(c) rights expeditiously.

with the reasoning of these cases.  Because § 1421(c) provides an alternative "adequate remedy," this factor, as well as all other relevant factors, support the conclusion that Congress intended § 1421(c) to preclude plaintiffs' claims.

## III.     DECLARATORY JUDGMENT ACT

The Declaratory Judgment Act "'is not an independent source of federal jurisdiction.'" *C&E Servs., Inc. v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002) (quoting *Schilling v. Rogers,* 363 U.S. 666, 677 (1960)).  "Rather, 'the availability of [declaratory] relief presupposes the existence of a judicially remediable right.'" *Id.* (quoting Schilling, 363 U.S. at 677).  Thus, having concluded that the Court lacks jurisdiction over plaintiffs' APA and constitutional claims, it must also dismiss their claim under the Declaratory Judgment Act.[19]

## CONCLUSION

For the reasons stated above, the Court concludes it lacks subject matter jurisdiction over plaintiffs' claims.  Since plaintiffs' substantive counts under the APA and the Constitution (Counts I & II) are precluded by 8 U.S.C. § 1421(c), the Court also lacks jurisdiction over the claim under the Declaratory Judgment Act (Count III).  Accordingly, defendant's motion to dismiss for lack of subject matter jurisdiction is granted.  A separate Order accompanies this Memorandum Opinion.



ELLEN S. HUVELLE
United States District Judge

Date:    December 21, 2019

---

[19] Count IV of the complaint purports to be a separate claim for injunctive relief, but, as no such claim or cause of action exists, it is really just "a request that the Court grant a particular form of relief (an injunction) to redress the other claims plaintiffs assert."  *Guttenberg v. Emery*, 41 F. Supp. 3d 61, 70 (D.D.C. 2014).